176 Cal.App.3d 1225 (1986)
222 Cal. Rptr. 673
In re CONNIE M., a Minor.
TULARE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Petitioner and Respondent,
v.
YSABEL V. et al., Objectors and Appellants. RICHARD THOMAS et al., Petitioners and Respondents,
v.
YSABEL V. et al., Objectors and Appellants.
Docket No. F004841.
Court of Appeals of California, Fifth District.
January 29, 1986.
*1228 COUNSEL
Donald R. Reynolds and Nancy Marsh, under appointments by the Court of Appeal, for Objectors and Appellants.
Lita O'Neill Blatner, County Counsel, Robert L. Felts and Richard V. Monahan, Deputy County Counsel, for Petitioner and Respondent.
James B. Preston for Petitioners and Respondents.
Peter C. Carton, under appointment by the Court of Appeal, for Minor.
[Opinion certified for partial publication.[*]]
OPINION
CASTELLUCCI, J.[*]
Martha M. and Ysabel V. appeal from a judgment pursuant to Civil Code section 232, subdivisions (a)(2) and (a)(7),[1] declaring their minor daughter, Connie M., forever free from their custody and control.

STATEMENT OF THE CASE
On November 17, 1983, the Tulare County Department of Public Social Services (hereinafter DPSS) filed a petition pursuant to section 232, subdivision (a)(7) to declare free from parental custody and control Connie M., born August 17, 1979.
On March 22, 1984, a petition was filed by Richard and Rene Thomas, Connie's foster parents (hereinafter foster parents) pursuant to section 232, subdivisions (a)(2) and (a)(7) to declare Connie M. free from the custody and control of her natural parents.
On September 17, 1984, the hearing on both petitions (they were consolidated) began.
On October 25, 1984, the trial court filed a written order granting the petitions and made the following findings:
"1. All of the allegations in the Petitions are sustained by competent evidence and are found true by clear and convincing evidence;
*1229 "2. That the aforesaid Petitions should be granted;
"3. That notice of the hearing on the Petitions was given as prescribed by the Civil Code;
"4. That the probation department of Tulare County, State of California has filed written reports of investigation of the circumstances of the minor child, including a favorable recommendation to declare the minor free from the custody and control of MARTHA M[] and YSABEL V[]; said report was received into evidence pursuant to Civil Code, Section 233;
"5. That an award of custody of the minor child to MARTHA M[] and/or YSABEL V[] would be detrimental to the child, and an award of custody to Petitioners is required to serve the best interest of the child;
"6. That it would be in the best interests and protection of the child to be declared free from the custody and control of her parents, MARTHA M[] and YSABEL V[];
"7. That the minor child, CONNIE M[], has been in out-of-home placement under the supervision of the juvenile court for a one-year period and that MARTHA M[] and YSABEL V[] have failed during that period, and are likely to fail in the future, to maintain an adequate parental relationship with the child, which includes providing both a home and care and control for the child;
"8. That trial placement of the child in the physical custody of the parents or visitation with the parents during the aforesaid one-year period did not result in permanent placement of the child with the parents;
"9. That the minor child, CONNIE M[], has been cared for in one or more foster homes, under the supervision of the juvenile court for twelve months and that MARTHA M[] and YSABEL V[] have failed during such period, and are likely to fail in the future, to provide a home for the child, provide care and control for the child, and maintain an adequate parental relationship with the child;
"10. That physical custody of the child by the parents during the aforesaid twelve month period were [sic] insubstantial;
"11. That reasonable services have been provided and offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the *1230 availability of these services, return of the child to the parents would be detrimental to the child;
"12. That the Court in making its decision has considered the wishes of the child for termination of parental control and has acted in the best interests of the child;
"13. That immediate severance of the parental relationship is the least detrimental alternative available to the Court;
"14. That the DEPARTMENT OF PUBLIC SOCIAL SERVICES are proper to be appointed as Guardian of the minor child."

THE FACTS
Connie M. was born on August 17, 1979, to Martha M. (hereafter mother) who was 15 years old, and Ysabel V. (hereafter father). Mother and father have not married. On October 25, 1979, she was placed in Tulare County Hospital for failure to thrive, diarrhea, weight loss and poor feeding. She was taken into protective custody and placed in the foster home of the Thomases shortly thereafter. On December 9, 1979, she was adjudged a dependent of the court. She was placed in a different foster home together with her mother on January 19, 1980. On January 25, 1980, Connie was returned to the Thomas home because her mother had failed her foster home placement. The mother was ordered to attend parenting classes, obtain suitable housing and maintain regular visitations with Connie M.
David Stevenson, an employee of DPSS, was assigned to the case from September 1980 until mid-1981. During this time Stevenson supervised the reunification plan for the mother and Connie. The father was contacted but stated he was not in a position to care for Connie and did not request to take care of her. Services were explained to the father but he said he did not want any. The mother refused to live in a foster home with Connie and she had no one available to live with her to help her learn to cope with the child. Connie remained with the foster parents. During late 1980 through mid-1981, Connie had ongoing dietary problems. When she was returned to the foster parents after visits with the mother and father, Connie would almost always be ill.
After several reunification plans had failed, a fourth plan was agreed to by the parents in August 1982. After that plan was instituted, scheduled visits occurred for the most part. Initially, the mother and father provided their own transportation, but later, the foster parents had to provide the transportation. Both mother and father tended to be late for the scheduled *1231 appointments. During the visits Connie spent most of the time with her father. The mother's attendance at required parenting courses was good until December 1982, when things "fell apart." The mother's attendance dropped off, she started bickering with the staff and did not complete the courses. The mother was slow in taking her infant son, Abel (born October 8, 1982), to the doctor. He was very sickly. During visits the mother gave a great deal of attention to Abel because she didn't want him taken away. Connie was a "sideline." The mother's affection toward Connie was lacking and there was very little one-on-one interaction between them. The father failed to make support payments. He was in jail from December 12, 1982, to January 3, 1983, for prowling, and then later in 1983 for about six months for burglary.
The parents were given a 10-day visit with Connie in January 1983. During this time the mother became very uncooperative with the DPSS. Connie was, however, allowed to remain with the parents until the annual review hearing. A contested annual review was held in March 1983. For that review, the court appointed Margarita Prado-Borrego, a licensed psychotherapist, to develop a plan to help Connie cope with the transition from the foster parents to the natural parents. At the conclusion of the review, Judge Allen ordered that Connie was to remain a dependent child to be placed with the natural mother and father, and the reunification plan submitted by Prado-Borrego was adopted in its entirety. A further review was held on June 22, 1983, and Connie was allowed to remain with her natural parents.
During the extended time in 1983 when Connie was in the custody of the mother and father (mostly the mother due to the father's incarceration), two social workers were assigned to the case in addition to Prado-Borrego.
Prado-Borrego first had contact with Connie on January 20, 1983, when she observed Connie to be an active, precocious, spontaneous and happy child. After her appointment by the court in March 1983, she saw Connie on a weekly basis. Over the next several months while in the custody of the mother and father, Connie changed and became quiet. Connie and the mother failed to attend scheduled appointments with Prado-Borrego, and Prado-Borrego then made home visits to monitor Connie's behavior. Connie would at times become upset, aggressive, tearful, withdrawn and fearful. It appeared to the social workers that the mother was giving minimal care to Connie and that the relationship between the mother and Connie lacked affection.
On September 27, 1983, Judge Kim found it would be detrimental to Connie for her to remain in the custody and care of the mother. He also found that reunification plans had been instituted but were not successful. *1232 Connie was ordered removed from the mother's custody and placed in foster care. Judge Kim ordered that permanency planning be instituted.
Connie's behavior improved after her return to the foster parents (the Thomases). During therapy, Connie expressed the desire to live with the foster parents, and she would refer to the foster parents as her family. During play therapy, Connie would pretend to call her natural mother and tell her she wasn't going to come back home. It was Prado-Borrego's opinion that the foster parents are Connie's psychological parents and that the return of Connie to her natural parents would be detrimental.
At the time of trial (Sept. 14, 1984), the father was in custody for attempted sale of heroin, having been incarcerated since June 1984.

DISCUSSION

I.

DID THE TRIAL COURT ERR IN ALLOWING THE FOSTER PARENTS TO ACT AS PARTIES?
(1) The father contends that the trial court erred in allowing the foster parents to act as parties in this action since the question was not whether the trial court should remove the child from foster care but whether the natural parents' rights should be permanently severed. (The mother does not raise this issue.) Father asserts the petition should have been abated pursuant to Code of Civil Procedure section 430.10, subdivision (c). This contention is without merit. The father did not make a proper objection below and has waived any error on appeal as to that code section. (See Code Civ. Proc., § 430.80.) Furthermore, even if an objection had been properly made, it would have failed.
(2) The California Supreme Court in In re B.G. (1974) 11 Cal.3d 679 [114 Cal. Rptr. 444, 523 P.2d 244] recognized the importance of participation in custody matters by the "de facto parents."
"The fact of biological parenthood may incline an adult to feel a strong concern for the welfare of his child, but it is not an essential condition; a person who assumes the role of parent, raising the child in his own home, may in time acquire an interest in the `companionship, care, custody and management' of that child. The interest of the `de facto parent' is a substantial one, recognized by the decision of this court in Guardianship of Shannon (1933) 218 Cal. 490 [23 P.2d 1020] and by courts of other jurisdictions *1233 and deserving of legal protection. (See Goldstein, Freud & Solnit, Beyond the Best Interests of the Child (1973) pp. 17-20.)
"The status of the de facto parent received statutory sanction with enactment of the Family Law Act in 1969. Previously Civil Code section 138 distinguished only between awards of custody to parents and to nonparents; the Family Law Act, in Civil Code section 4600, added the stipulation that when an award of custody to the parent would be detrimental next in order of preference stands `the person or persons in whose home the child has been living in a wholesome and stable environment.'
"The juvenile court in a dispositional hearing must undertake `a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of the relative merits of alternative custody awards. (In re A.J. (1969) 274 Cal. App.2d 199, 202 [78 Cal. Rptr. 880].) The presence of de facto parents will aid the court in that endeavor; the views of such persons who have experienced close day-to-day contact with the child deserve consideration; moreover, an award of custody to such de facto parents is often among the alternate dispositions which the court must evaluate.
"We conclude that de facto parents, such as the foster parents in this case, should be permitted to appear as parties in juvenile court proceedings. Their standing should not depend upon the filing of a petition for guardianship, although the filing of such petition may aid in attesting to their interest in the custody of the child; nor should their participation be restricted to the limited role of an amicus curiae; they should be permitted to appear as parties to assert and protect their own interest in the companionship, care, custody and management of the child." (Id., at pp. 692-693, fns. omitted.)
The father has cited no authority which would prevent the foster parents from acting as parties to protect their strong concern for Connie M., nor has he pointed to any prejudice which resulted from the consolidation of the petitions by the lower court. Furthermore, the interests of the child and the interests of judicial economy favor a consolidated action to determine the merits of the petition expeditiously in one action.

II.

(3a) HAD CONNIE BEEN IN FOSTER CARE OR "OUT-OF-HOME" PLACEMENT FOR 12 MONTHS OR A ONE-YEAR PERIOD PRIOR TO THE FILING OF THE PETITIONS WITHIN THE MEANING OF SECTION 232, SUBDIVISION (a)(7)?
Connie was placed in the foster parents' home on November 9, 1979, and was adjudged a dependent child of the juvenile court on December 19, 1979. *1234 She remained in the foster parents' care through January 1983. Thereafter and until September 27, 1983, Connie was in the custody of her natural parents, when she was then returned to the custody of the foster parents where she has since remained.
On November 7, 1983, the DPSS filed its petition pursuant to section 232, subdivision (a)(7), which then read as follows:
"(a) An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his parents when the child comes within any of the following descriptions:
".... .... .... .... .... .... .
"(7) Who has been cared for in one or more foster homes, residential facilities licensed pursuant to Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code, or health facilities licensed pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code, under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for 12 months, provided the court finds by clear and convincing evidence that return of the child to the child's parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to do all of the following:
"(i) Provide a home for the child.
"(ii) Provide care and control for the child.
"(iii) Maintain an adequate parental relationship with the child.
"The court shall make a determination that reasonable services have been provided or offered to the parents or guardians which were designed to aid the parents or guardians to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents or guardians would be detrimental to the child. Probation officers or social workers who provided these services shall appear at the termination proceedings.
"Physical custody of the child by the parent or parents for insubstantial periods of time during the required 12-month period will not serve to interrupt the running of such period.
*1235 "This subdivision shall not apply to a parent or parents who have been convicted of a felony and thereby are unable to receive reasonable services designed to aid them to overcome the problems which originally led to the deprivation of physical custody."
The foster parents filed their petition on March 22, 1984, pursuant to subdivisions (a)(2) and (a)(7) of section 232. Subdivision (a)(7) had been amended and read as follows:
"(7) Who has been in out-of-home placement under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for a one-year period, if the court finds that return of the child to the child's parent or parents would be detrimental to the child and that the parent or parents have failed during that period, and are likely to fail in the future, to maintain an adequate parental relationship with the child, which includes providing both a home and care and control for the child.
"The court shall make a determination that reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents would be detrimental to the child. The probation officer or social worker currently assigned to the case of the child shall appear at the termination proceedings.
"Trial placement of the child in the physical custody of the parent or visitation of the child with the parent during the one-year period, when the trial placement or visitation does not result in permanent placement of the child with the parent, shall not serve to interrupt the running of the one year period."
The mother contends that the county and the foster parents lack the statutory prerequisites for filing a petition under section 232, subdivision (a)(7) because Connie had not been in out-of-home placement for one year immediately prior to the filing of the petition. (The father does not raise this issue.)
Section 232, subdivision (a)(7) was again amended in 1985 (subsequent to the trial of this matter) to provide a starting point for the running of the one-year period. It provides:
"(7) Who has been in out-of-home placement under the supervision of the juvenile court, the county welfare department, or other public or private *1236 licensed child-placing agency for a one-year period, if the court finds that return of the child to the child's parent or parents would be detrimental to the child and that the parent or parents have failed during that period, and are likely to fail in the future, to maintain an adequate parental relationship with the child, which includes providing both a home and care and control for the child.
"If the minor has been adjudged a dependent child of the juvenile court and placed in out-of-home placement pursuant to Section 361 of the Welfare and Institutions Code, the one-year period shall be calculated from the date of the dispositional hearing at which the child was placed in out-of-home placement pursuant to that section. If the minor is in placement under the supervision of a county welfare department or other public or private licensed child-placing agency, pursuant to a voluntary placement, as described in Section 16507.4 of the Welfare and Institutions Code, the one-year period shall be calculated from the date the minor entered out-of-home placement.
"The court shall make a determination that reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents would be detrimental to the child. The probation officer or social worker currently assigned to the case of the child shall appear at the termination proceedings.
"If the minor has been adjudged to be a dependent child of the court pursuant to Section 300 of the Welfare and Institutions Code, the court shall review and consider the contents of the juvenile court file in determining if the services offered were reasonable under the circumstances.
"Trial placement of the child in the physical custody of the parent or visitation of the child with the parent during the one-year period, when the trial placement or visitation does not result in permanent placement of the child with the parent, shall not serve to interrupt the running of the one-year period." (Italics added.)
The mother argues that the fact that the Legislature had to amend this section to establish a starting point strongly favors the interpretation that the 1984 version that was in effect at the time of trial provided for a later period, i.e., the year preceding the filing of the petition.
The mother also argues that the "12-month" or "one-year" period must be a single consecutive period and cannot be established by tacking together *1237 several separate periods. (4a) (See fn. 2.) The mother cites as further support for her position the fact that the Legislature included language that the return to the natural parents for insubstantial periods of time will not interrupt the running of the period, distinguishes it from section 224.[2]
(3b) Mother contends that since the time at which a parent's ability to care for her child is at the time of the termination proceedings, it is reasonable to look to the year preceding the filing of the petition as the determinative year. Finally, the mother asserts that the eight months Connie spent with her in 1983 cannot be viewed as either a trial placement or as "insubstantial."
DPSS' main attack on the mother's argument is that the placement of Connie with her for eight months was only a trial placement. DPSS contends that Welfare and Institutions Code sections 361 and 366.25 together with section 232, subdivision (a)(7) provide a consistent and well-ordered plan for the long-term placement of minor children and that such a plan can include placement of the child in the custody of the parent without defeating the time limits of section 232, subdivision (a)(7). DPSS further contends that if the mother's argument is accepted, then the primary purpose of Welfare and Institutions Code section 366.25 would be defeated. The mother's "theory would result in adoptable minors not being freed from their parents, even after reunification efforts had failed, if reasonable services were provided while they were in the physical custody of their parents."
Foster parents assert that it is clear, in light of the legislative history, that the Legislature did not intend that the one-year period be the one year immediately prior to the filing of the petition, noting that the changes in section 232 have shortened the time periods for termination to be brought. *1238 They also assert that the placement of Connie with the mother in 1983 was a trial placement. Foster parents point out that Connie had been under the supervision of the court for over four years and with the mother only approximately 14 percent of that time.
The petitions of DPSS and the foster parents were filed under different applicable code sections; DPSS' petition under the 1983 version and the foster parents' petition under the 1984 version. In order to affirm the lower court's judgment, the petition need only be authorized under one of these sections. As previously discussed, the foster parents were proper parties to this action. Since we find the judgment to be correct under the 1984 version of section 232, subdivision (a)(7), we shall focus our discussion on this version. We note that the mother cites the 1984 version as the applicable code section, yet refers back to the insubstantial period of time language in the 1983 code section in her discussion.
The mother's argument that the amendment of subdivision (a)(7) in 1985 to establish a starting point for the one-year period favors the interpretation that the starting point in the 1984 version was the one year prior to the filing of the petition, appears initially to have merit under established rules of statutory construction; but, upon further examination, her argument fails. (5) "While an intention to change the law is usually inferred from a material change in the language of the statute [citations omitted], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute." (Martin v. California Mut. B. & L. Assn. (1941) 18 Cal.2d 478, 484 [116 P.2d 71].) "Subsequent legislation clarifying a statute does not change its meaning but merely supplies an indication of legislative purpose which may be considered together with other factors in arriving at the true intent existing at the time the statute was enacted." (In re Marriage of Paddock (1971) 18 Cal. App.3d 355, 360 [95 Cal. Rptr. 652].)
(3c) The amendment of 1985 reflects two changes: the additions of the second and fourth paragraphs. The rest of the section is identical to the 1984 version. As set forth, ante, the second paragraph states when the one-year period begins to run. It is our opinion that this paragraph was inserted only as clarification of when the one-year period was to begin. The paragraph containing the language stating the minor must have been out of the home for a one-year period remained unchanged. The second paragraph adds nothing to this section other than to clarify the first paragraph.
The mother's contention that the time period of one year must be continuous and cannot be a result of tacking time periods together is not contested by either the foster parents or DPSS.
*1239 (4b) The mother's argument that section 224 lends support to her position is also flawed. As previously set forth (see fn. 2), this section allows adoption without the consent of the noncustodial parent if that parent "for a period of one year willfully fails to communicate with and to pay for the care, support and education of the child when able to do so." The time period in that section has been interpreted to be any time after custody has been awarded to the other parent and need not be the year immediately prior to the adoption. (Adoption of Burton, supra, 147 Cal. App.2d 125, 133-136.) In Burton, the court held that the plain meaning of the language of section 224 was that any one-year period fulfilled the requirement. (Id., at p. 136.) The "insubstantial period of time" language in the 1983 version of section 232, subdivision (a)(7) and the "trial placement" language in the 1984 version does not undermine the conclusion reached in Burton. That language merely clarifies what can occur during the one-year period; such exceptions were not included in section 224 because that section contemplates a total lack of communication between the parent and child for a one-year period.
(3d) Citing In re Susan M. (1975) 53 Cal. App.3d 300 [125 Cal. Rptr. 707], the mother contends that the one year immediately prior to termination is the critical period because the parents' ability to care for the child should be judged at the time of the termination proceedings. The court in Susan M. held that upon retrial the lower court should resolve whether the facts which gave rise to the parental neglect persisted at the time of the hearing. (Id., at p. 313.) Although the time of the hearing is a crucial period when deciding if parental rights should be terminated, to hold that the one-year period immediately preceding the filing of the petition is the requisite year would defeat the legislative purposes as set forth in sections 232.5 and 232.6 which state: "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child. At all proceedings to declare a child free from parental custody and control, the court shall consider the wishes of the child, bearing in mind the age of the child, and shall act in the best interests of the child."
"The purpose of this chapter is to serve the welfare and best interests of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from his or her life. A declaration of freedom from parental custody and control pursuant to this chapter terminates all parental rights and responsibilities with regard to the child."
This case is a particularly good example of how these purposes would be thwarted if the mother's interpretation of the statute was accepted. The courts and social services might be reluctant to try last ditch attempts to *1240 reunite the family in fear that such attempts would interrupt the running of the period. If the mother's position is accepted, it would result in the child being placed in limbo for another year if unsuccessful efforts involving placement with the natural parents were made during the year prior to the filing of the petition or it would result in social services being reluctant to try services over and above the bare minimum required by the statute, especially those involving home placement with the natural parents. Neither of these results are in the best interests of the child.
An additional year in limbo would defeat the compelling state interest of prompt severance of the parental relationship to avoid lasting psychological harm to the child. (In re David B. (1979) 91 Cal. App.3d 184, 195-196 [154 Cal. Rptr. 63].) When reunification efforts fail, the best interests of the child will be served by freeing her from parental control for adoption so that the child may benefit from the prospect of a home which provides stability and security that would otherwise be missing in her life. (In re Eugene W. (1972) 29 Cal. App.3d 623, 629 [105 Cal. Rptr. 736].) An interpretation of the statute as the mother suggests would defeat these compelling interests.
Further and convincing support for the interpretation that the one-year period can be any time prior to the filing of the petition is found when one reads and compares each subdivision of section 232. In order to meet the requirements of subdivision (a)(3), it must be shown that "the child has been a dependent child of the juvenile court, and the parent or parents have been deprived of the child's custody continuously for one year immediately prior to the filing of a petition pursuant to this section." (Italics added.) (6) A statute should be construed with reference to the whole system of law it is enacted to govern and the scheme should be interpreted so that sections are harmonized with one another. (Kaiser Steel Corp. v. County of Solano (1979) 90 Cal. App.3d 662, 667 [153 Cal. Rptr. 546].) "Where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted." (Marsh v. Edwards Theatres Circuit, Inc. (1976) 64 Cal. App.3d 881, 891 [134 Cal. Rptr. 844].) "`"When different language is used in the same connection in different parts of a statute it is to be presumed the Legislature intended a different meaning and effect."'" (Charles S. v. Board of Education (1971) 20 Cal. App.3d 83 [97 Cal. Rptr. 422].) (3e) If the Legislature had intended the time period of subdivision (a)(7) to be the one year immediately prior to the filing of the petition, they would have done so explicitly, as they did in subdivision (a)(3).
Even if subdivision (a)(7) were interpreted to mean that the requisite time period is the one year prior to the filing of the petition, the petition would *1241 still be sustainable because the placement of Connie with her mother was only a trial placement. When Connie was initially placed with the mother in 1983, the court did not state whether this was a temporary or permanent placement. The court that heard the evidence at the termination proceedings explicitly found that this extended placement was a temporary placement. This was a finding of fact and as such can only be reversed on appeal if it is not supported by substantial evidence. The record supports such a finding. During the first few months of Connie's placement with her natural parents, they were being very closely supervised. Visitation by the foster parents was specifically authorized by the court, including authority to increase the visitation schedule in the event Connie suffered "too much trauma." There were two social workers as well as a family psychotherapist working closely with the mother and the child. After this barrage of services, the workers "pulled back" to monitor the situation to determine if the mother could make it on her own. The requiring and providing of intensive social services indicates a desire to retain control of the situation. It was reasonable for the court to view this factual situation as being a temporary placement with permanent placement as a future alternative if their extensive efforts succeeded. They did not succeed, and therefore permanent placement with the mother never occurred.
Furthermore, Welfare and Institutions Code section 361 states that if a minor is removed from parental custody the probation officer must provide services to the parents for a maximum period not to exceed 12 months. If the service plan looks as if it can be achieved, an additional six months of services will be allowed. It goes on to say that "[p]hysical custody of the minor by the parents or guardian during the 18-month period shall not serve to interrupt the running of the period." Thus, reunification and services are a clear desire of the Legislature. But they have also made it clear that mere physical custody by the parents should not be utilized to undermine the time limits of these sections, which are set forth to achieve the ultimate goal of giving permanency and stability to a child's life as expeditiously and as fairly as possible.

III-IV[*]
.... .... .... .... .... .... .

CONCLUSION
We conclude that the trial court was correct in terminating the parental rights of appellants pursuant to section 232, subdivision (a)(7).
*1242 The judgment is affirmed.
Woolpert, Acting P.J., and Hamlin, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III through VI.
[*] Assigned by the Chairperson of the Judicial Council.
[1] All future code references will be to the Civil Code unless otherwise noted.
[2] Section 224 provides:

"A child having a presumed father under subdivision (a) of Section 7004 cannot be adopted without the consent of its parents if living; however, if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents, and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of the child when able to do so, then the parent having custody alone may consent to the adoption, but only after the parent not having custody has been served with a copy of a citation in the manner provided by law for the service of a summons in a civil action that requires him or her to appear at the time and place set for the appearance in court under Section 227; failure of a parent to pay for the care, support and education of the child for the period of one year or failure of a parent to communicate with the child for the period of one year is prima facie evidence that the failure was willful and without lawful excuse; nor a child with no presumed father under subdivision (a) of Section 7004 without the consent of its mother if living; except that the consent of a father or mother is not necessary in the following cases: ..."
The statute has been interpreted to mean that the one-year period need not be calculated as that immediately prior to the adoption. (See Adoption of Burton (1957) 147 Cal. App.2d 125, 136 [305 P.2d 185].)
[*] See footnote on page 1225, ante.