[No. C006079. Third Dist. Mar. 23, 1990.]

In re JODY R. et al., Persons Coming Under the Juvenile Court Law.
SIERRA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v.
GENE C. et al., Defendants and Appellants.

**COUNSEL**

Andrew French Loomis and Michael McPartland, under appointments by the Court of Appeal, for Defendants and Appellants.

William W. Pangman, County Counsel, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, J.**—Sandra H. and her live-in male companion, Gene C., appeal from an order of the juvenile court joining Gene as a party to proceedings in which Sandra's children were declared dependents of the court under Welfare and Institutions Code section 300, subdivision (a). (Further statutory references are to the Welf. & Inst. Code.)

We conclude that, because it has no statutory authority to do so, a juvenile court is without jurisdiction to order the involuntary joinder of a live-in companion who is neither the parent nor guardian of a dependent child in an effort to secure the companion's compliance with a reunification plan designed to overcome the problems which caused the dependency to be established. Since the Legislature has limited the options available to the juvenile court with respect to live-in companions, we are compelled to reverse the order of joinder.

### FACTS AND PROCEDURAL BACKGROUND

Following a report that Sandra's live-in male companion, Gene, had repeatedly beaten one of Sandra's daughters, the Sierra County Department

of Social Services (DSS) petitioned the juvenile court to declare Sandra's children dependents of the court under section 300, subdivisions (a) and (d).[1] In addition to physical abuse, the petitions contained other allegations which are not pertinent to this discussion.

Sandra and DSS entered into a stipulation with respect to the jurisdiction and disposition phases of the dependency proceedings. While neither admitting nor denying the factual allegations set forth in the petitions, Sandra admitted, among other things, that her children had been "disciplined" by Gene, had been removed from school without approval of the school district, suffered various degrees of emotional distress from past experiences, and were in need of emotional counseling. Sandra acknowledged that, based upon her admissions, the juvenile court would make findings and orders declaring the children dependents of the court under section 300, subdivision (a).

Except for the daughter who had been beaten by Gene, it was agreed that the children would remain with Sandra subject to her participation in a "reunification plan" set forth in the stipulation. The plan required that Sandra and her children be evaluated by a clinical psychologist and follow the psychologist's recommendations. Sandra also was required to attend parenting classes, readmit the children to school and "diligently work toward establishing a living situation in which the Minors are provided with a safe, stable and nurturing home" and toward "protecting the Minors from unreasonable discipline or abuse from others." In this regard, the reunification plan sought to place certain requirements on "any other adult [who] lives with Sandra and the Minors . . including Gene . . . ." These requirements included that Gene participate in psychological counseling, attend parenting classes, and "diligently work toward establishing a living situation in which the Minors are provided with a safe, stable and nurturing home . . . in which reasonable disciplinary standards are set for the Minors . . . ."

Sandra signed this stipulation, but she and her attorney objected to the requirements imposed upon Gene, who was not present at the hearing and

---

[1] At the time this dependency action was filed, section 300, subdivisions (a) and (d) provided as follows: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent or guardian actually exercising care or control. . . . [¶] (d) Whose home is an unfit place for him or her by reason of neglect, cruelty, depravity, or physical abuse of either of his or her parents, or of his or her guardian or other person in whose custody or care he or she is." This statute was repealed in its entirety operative January 1, 1989, as part of extensive changes to the dependency law made by the Legislature in 1987. (Stats. 1987, ch. 1485, § 3.)

did not sign the stipulation. With this understanding, the juvenile court accepted the stipulation and declared the children dependents of the juvenile court under Welfare and Institutions Code section 300, subdivision (a). The allegations set forth in the petition under section 300, subdivision (d), were dismissed. The juvenile court then ordered that the children remain in Sandra's home and directed her to comply with the requirements of the reunification plan set forth in the stipulation.

Over the next year, Gene, who continued to reside with Sandra and the children, voluntarily participated in counseling. However, he refused to attend parenting classes, and the children reported that he continued to inflict corporal punishment on them. Recognizing that the juvenile court did not have jurisdiction over Gene, DSS made an ex parte application for an order to show cause why Gene should not be joined as a party to these dependency proceedings in order to enforce the terms of the reunification plan which pertained to him.

Both Sandra and Gene opposed this application on the ground that the juvenile court did not have jurisdiction to make such an order. The juvenile court initially continued the application in order for Gene to voluntarily comply with the reunification plan by continuing counseling with a therapist and refraining from corporal discipline of the children. Apparently, this was not entirely successful as Gene resented the intervention of DSS. Therefore, at the semiannual review hearing, the juvenile court granted DSS's application and joined Gene as a party, ordering him to comply with the terms of the reunification plan to the extent it was not inconsistent with the directions of his therapist and to refrain from hitting, spanking or inflicting corporal punishment on the minors. Sandra was ordered to inform DSS of any instances of Gene violating this directive. Both Gene and Sandra have appealed from the order.

DISCUSSION

I

The parties have informed us that, while this appeal was pending, the juvenile court dismissed the dependency proceedings upon the recommendation of DSS. Thus, the issue before us is no longer of consequence to the parties, and any ruling by this court would have no practical effect upon them.

As a general rule, "an appeal presenting only abstract or academic questions is subject to dismissal as moot." (*Downtown Palo Alto Com. for*

*Fair Assessment* v. *City Council* (1986) 180 Cal.App.3d 384, 391 [225 Cal.Rptr. 559].) However, both sides have suggested that this court address the merits of the appeal, relying upon an established exception which provides, "If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213].)

We choose to exercise such discretion in this case. While we hope that the necessity for reestablishing these dependency proceedings does not reoccur, the possibility for such action exists. Moreover, considering the large volume of dependency cases, the societal interest served by such proceedings, and the frequency with which these proceedings involve live-in companions, we find that the issue raised is likely to recur and is a matter of significant public interest. Therefore, we address the merits of this appeal.

## II

Appellants' sole contention is that the juvenile court lacked jurisdiction to order the involuntary joinder of Gene in these dependency proceedings. ■ "Lack of jurisdiction" is a term used to describe situations in which a court is without authority to act. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288-291 [109 P.2d 942, 132 A.L.R. 715].) In its most fundamental sense, lack of jurisdiction means an entire absence of power to hear the particular subject matter of the case. (*Id.*, at p. 288.) The term also relates to the court's inability to render judgments against individuals who have not properly been made parties to an action. (*Ibid.*) Even when a court has jurisdiction over the subject matter and the parties in a fundamental sense, it may have no "jurisdiction" or power to make orders which are not authorized by statute. (*Id.*, at pp. 288-290.) "[I]t seems well settled . . . that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction . . . ." (*Id.*, at p. 290.) Here, appellants do not contest the juvenile court's subject matter jurisdiction. Rather, they argue that the court exceeded the defined powers conferred on it by statute when it joined Gene as a party to the dependency proceedings against his wishes.

In addressing appellant's contention, we find it useful to begin with a brief overview of dependency law. ■ First, we note that "[a] superior court convened as and exercising the special powers of a juvenile court is vested with jurisdiction to make only those limited determinations authorized by the legislative grant of those special powers." (*In re Lisa R.* (1975)

13 Cal.3d 636, 643 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017]; see § 245.) In the absence of such specific statutory authorization, a juvenile court is vested with authority to make only those determinations which are "incidentally necessary to the performance of those functions demanded of it by the Legislature pursuant to the Juvenile Court Law." (*Ibid.*)

■ Dependency law is set forth in sections 300 through 399.[2] Its purpose is twofold: to protect the welfare of children by the state acting as parens patriae; and to safeguard the parents' or guardians' rights to raise their children by providing services to help them overcome problems which created the need for a dependency adjudication. (*In re John B.* (1984) 159 Cal.App.3d 268, 274 [205 Cal.Rptr. 321]; *In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599 [157 Cal.Rptr. 280]; *In re Nicole B.* (1979) 93 Cal.App.3d 874, 879-880 [155 Cal.Rptr. 916].)

Section 300 provides that any child who comes within one of the descriptions set forth in that statute is within the jurisdiction of the juvenile court which may adjudge the child a dependent of the court. Dependency proceedings are initiated by either the county department of social services or probation department filing a petition alleging that the child comes within the description of one or more of the categories set forth in section 300, each of which describes a situation in which the child requires the supervision of the juvenile court. (§§ 272, 325.) The decision whether to sustain the petition is made by the juvenile court at the jurisdiction hearing. (§ 356.) If the petition is sustained, the court proceeds to a disposition hearing. (§ 358.) If the child is adjudged a dependent, the court must then determine whether to remove the child from the custody of the parent or guardian. (§§ 361, 361.2, 361.3.) In addition, the court is required, in the majority of cases, to order the parent or guardian to participate in services designed to overcome the problems which created the need for the dependency. (§§ 361.2, subd. (a)(2); 361.5, subd. (a); 362, subd. (b).) If the child is removed from the custody of a parent or guardian, the court must, in most cases, order the parent or guardian to participate in a reunification plan. (§ 361.5.) Periodic review hearings are conducted to ascertain the progress made toward eliminating the conditions or factors which required juvenile court intervention and supervision, and to determine the continuing need for and appropriateness of the dependency orders. (§§ 364, 366, subd. (a).) The court's order concerning the child's place of residence is subject to change during the course of the dependency, and a supplemental petition must be filed whenever the social worker or probation officer seeks a more restrictive level of

---

[2] At the time these dependency proceedings were initiated, rules pertaining to their conduct were contained in California Rules of Court, rules 1301-1396. Those rules were repealed effective July 1, 1989, and replaced with rules 1400 through 1497.

placement based on the failure of the prior disposition to effectively protect the child. (§ 387.) In the event the parent or guardian is unable to overcome the problems which led to a loss of physical custody of the child, the juvenile court is required to conduct a hearing to determine the future status of the child, which includes, in order of preference, freeing the child for adoption, appointing a guardian for the child or placing the child in long-term foster care[3] (§ 366.25; for children made dependents on or after Jan. 1, 1989, see §§ 366.21, 366.23, 366.26.)

Article 10 of the Juvenile Court Law (§§ 360-370) sets forth the orders which the juvenile court is authorized to make upon finding that a child comes within its jurisdiction. Section 361, subdivision (a), provides that the court may limit the control to be exercised over the dependent child by his or her parent or guardian in all cases where the child is adjudged a dependent child of the court. Section 362, subdivision (c), authorizes the juvenile court to direct any and all reasonable orders to the parent or guardian of the child required for the child's care, supervision, custody, maintenance or support.

Article 10 further authorizes the juvenile court to make certain orders with respect to participation in programs designed to eliminate the conditions which created the need for the dependency. These orders are perhaps the most critical component of the juvenile dependency law. The decision whether to terminate the dependency, as well as whether to return the child to the physical custody of his or her parent or guardian, is based primarily upon the progress the parent or guardian has made in meeting these objectives. Where the child was not removed from the home, the failure of the parent or guardian to participate regularly in any court-ordered treatment program constitutes prima facie evidence that the conditions which led to the creation of the dependency persist, therefore requiring continued supervision by the juvenile court. (§ 364, subd. (c)). In cases where the child was removed from the home, failure of the parent or guardian to participate in reunification services constitutes prima facie evidence that return of the child would be detrimental and, therefore, not permitted. (§ 366.2, subd. (e); for children made dependents on or after Jan. 1, 1989, see § 366.21, subd. (e); see also § 366.22, subd. (a) which became operative Jan. 1, 1989.)

---

[3] At the time these dependency proceedings were initiated, a separate "permanent plan" hearing was conducted during which the juvenile court authorized that proceedings be initiated to pursue one of these three alternatives. As part of extensive legislative changes to the juvenile dependency law applicable to all children declared dependents on or after January 1, 1989, the juvenile court is now authorized to decide the future status of a dependent child and to effect that status, rather than referring the case for initiation of Civil Code section 232 proceedings to terminate parental rights, or initiation of guardianship proceedings or placement in foster care, as under the prior provisions of the dependency law.

Authorization for the juvenile court to order participation in child welfare and reunification services is set forth in sections 361.2, 361.5, and 362. Section 362, subdivision (b), provides that when a child is adjudged a dependent of the court and remains with a parent or guardian, the parent or guardian shall be required to participate in child welfare services. In circumstances where the child is removed from the physical custody of one of the parents or a guardian, the court is required to ascertain whether the other parent, with whom the child was not residing at the time the events giving rise to the dependency occurred, is willing to assume custody of the child. If the juvenile court places the child with that parent, it may order that child welfare services be provided to that parent as well as the noncustodial parent. (§ 361.2, subd. (a)(2).) In other circumstances in which the child has been removed from the custody of his or her parent or guardian, section 361.5, subdivision (a), mandates the juvenile court to order the provision of child welfare services to the child and the parent or guardian for the purpose of facilitating reunification. When counseling or other treatment services are required, the juvenile court is required to order the parent to participate in those services, unless the court deems the parent's participation inappropriate or potentially detrimental to the child. Subdivision (b) of this section sets forth the circumstances in which the juvenile court is not required to order participation in reunification services. Whenever reunification services are ordered, they must include visitation between the child and his or her parent or guardian as frequently as possible, consistent with the well-being of the child. (§ 362.1.) Section 362, subdivision (c), provides a general authorization for the juvenile court to order the parent or guardian of the child to participate in counseling or education programs. This subdivision further provides that a foster parent or relative with whom the child is placed may be directed to participate in a counseling or education program at the discretion of the juvenile court if it deems such participation is appropriate and in the child's best interests.

## III

As can be seen in our overview of dependency statutes, the Legislature has authorized the juvenile court to order only two classes of persons—parents and guardians of a dependent child—to participate in the full panoply of reunification and child welfare services. In addition, the Legislature has authorized the juvenile court to order, at its discretion, two other classes of persons—foster parents and adult relatives with whom a child has been placed—to participate in certain designated services. Gene is not the biological parent of the dependent children nor does he have any biological relationship to them. He is not their parent by virtue of having adopted them nor does the record show that he has demonstrated any interest in

becoming their adoptive parent. The record further indicates that Gene is not the guardian of these children and did not seek such status. Finally, Gene had no contractual relationship with the state or Sierra County to provide for the care of these children as their foster parent.

Only the Legislature has the authority to determine which classes of caretakers can be ordered to comply with child welfare and reunification requirements. (*In re Lisa R., supra*, 13 Cal.3d at p. 643; *In re Jamie G.* (1987) 196 Cal.App.3d 675, 684 [241 Cal.Rptr. 869].) Since Gene is not the parent, guardian, relative or foster parent of Sandra's children, the juvenile court had no authority to order Gene's participation in reunification services. Furthermore, the legislative scheme, which depends upon the desire of parents or guardians to be reunited with their child and to eliminate the need for the dependency as motivation for their participation in reunification services, would not be served by requiring the participation of an individual who has expressed little or no interest in the well-being of the child. ■ As stated in *In re Jonathan R.* (1989) 211 Cal.App.3d 1214 [259 Cal.Rptr. 863], "Reunification services are voluntary, and cannot be forced on an unwilling or indifferent parent." (*Id.*, at p. 1220.) We can only assume this applies with more compelling force to an unwilling or indifferent person who has no biological relationship to the child.

DSS argues that the juvenile court had jurisdiction to join Gene and order him to participate in reunification services because he was the de facto parent of Sandra's children. We disagree.

■ DSS correctly notes that standing to participate in dependency proceedings has been conferred by judicial decision on "de facto parents," permitting them to participate in disposition, review and permanent plan hearings.[4] (*In re B. G.* (1974) 11 Cal.3d 679, 693 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Joshua S.* (1988) 205 Cal.App.3d 119, 122-125 [252 Cal.Rptr. 106]; *Christina K.* v. *Superior Court* (1986) 184 Cal.App.3d 1463, 1469 [229 Cal.Rptr. 564]; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1233 [222 Cal.Rptr. 673]; *Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079, 1084 [127 Cal.Rptr. 178].) ■ Before granting such status, the juvenile court must determine by a preponderance of the evidence that the person is entitled to status as a de facto parent. (*In re Joshua S., supra*, 205 Cal.App.3d at p. 125.)

---

[4]Since the time these dependency proceedings were instituted, the Judicial Council has promulgated California Rules of Court, rule 1412(e), which sets forth a procedure by which the juvenile court may grant standing to de facto parents to participate in the disposition hearing and any subsequent hearing in which the status of the dependent child is at issue.

The California Supreme Court has defined a de facto parent as a person who, on a day-to-day basis, assumes the role of parent seeking to fulfill both the child's physical needs and psychological needs for affection and care. (*In re B. G., supra*, 11 Cal.3d 679 at p. 692, fn. 18.) California Rules of Court, rule 1401(a)(4) provides that the person must have assumed this role "for a substantial period of time." Generally, de facto parent status has been conferred on foster parents who have had physical custody of the child. (*Ibid.*; *In re Joshua S., supra*, 205 Cal.App.3d at p. 125; *Christina K.* v. *Superior Court, supra*, 184 Cal.App.3d at p. 1465; *In re Connie M., supra*, 176 Cal.App.3d at p. 1233; *Katzoff* v. *Superior Court, supra*, 54 Cal.App.3d at p. 1084.) However, in very unusual circumstances, it may be extended to a person who has not resided with the child on a full-time basis. (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 420-421 [188 Cal.Rptr. 781].)

Although the California Supreme Court has not set forth specific guidelines for a juvenile court to apply in determining de facto parent status, one theme has emerged: in addition to having assumed, for a substantial period of time, the day-to-day role of a parent seeking to fulfill the child's physical needs and psychological needs for affection and care, the person should be one who "cares enough to seek and undertake to participate [in the dependency proceeding] to suggest that the court would profit by hearing his [or her] views as to the child's best interests . . . ." (*In re B. G., supra*, 11 Cal.3d at p. 692, fn. 18.) Thus, to qualify as a de facto parent, one must demonstrate that he or she cares about the child's well-being, desires to fulfill the child's needs, and intends to act in the child's best interests.

It is clear from the Supreme Court's description of a de facto parent that only persons who request to be made a party may be properly permitted to participate under this judicially declared rule of procedure since one who objects to such participation could not, by definition, be considered a de facto parent. Our research has disclosed no case in which a person who is neither the parent nor guardian of the dependent child has been joined involuntarily as a party in a dependency proceeding, and there is no statute in the dependency law which authorizes such action by the juvenile court.

██ Moreover, even upon being permitted to participate in the dependency action, a de facto parent is not accorded standing to take part in all proceedings; rather, participation is limited to disposition and other hearings subsequent to the jurisdiction hearing and is restricted to asserting his or her interest in the custody, companionship, care and management of the child. (*In re B. G., supra*, 11 Cal.3d at p. 693; *In re Joshua S., supra*, 205

Cal.App.3d at p. 122.)[5] The de facto parent is not considered a parent or guardian for purposes of the dependency law. (*In re B. G., supra*, 11 Cal.3d at p. 693, fn. 21; *Charles S.* v. *Superior Court* (1985) 168 Cal.App.3d 151, 156, fn. 4 [214 Cal.Rptr. 47].) Therefore, the de facto parent is not entitled to all of the rights accorded to persons who occupy the status of parent or guardian. (*Ibid.*) Since the de facto parent is not considered a parent or guardian, there is no statutory authority for the juvenile court to order a de facto parent to participate in child welfare or reunification services. (*In re Jamie G., supra*, 196 Cal.App.3d at p. 684.) "Only the legislature may decide which classes of caretaker should be afforded opportunities [to participate in reunification services]." (*Ibid.*)

██ In sum, we find there was no authority for the juvenile court to issue an order involuntarily joining Gene as a party to these proceedings in order to secure his compliance with the requirements of the reunification plan. Since Gene adamantly objected to becoming a party to these proceedings, he could not be accorded standing as a de facto parent. Moreover, even if Gene were a de facto parent, the juvenile court was without jurisdiction to join him and order him to comply with the requirements of the reunification plan, since the Legislature has authorized the juvenile court to direct such orders only to certain designated classes of persons which do not include de facto parents.

Certainly, the juvenile court's motivation in joining Gene as a party to the dependency proceedings was well-intentioned, designed to provide the court with power to enforce orders it deemed essential for the protection of the children. We need not recite the parade of horribles here but, suffice it to say, the children had been subjected to a long history of abuse at the hands of various men who have resided with the children's mother. The children suffered emotional distress as a result of their past experiences and were in need of psychological counseling. After the children were declared dependents of the court in part based on Gene's apparently inappropriate disciplining of them, the children reported that Gene continued to inflict corporal punishment on them. When Gene refused to voluntarily participate in services designed to address this problem, the trial court concluded that the circumstances were grave enough to justify an order joining Gene and compelling him to comply with reunification orders and services.

But good intentions in bad situations do not confer upon a juvenile court powers not granted by the Legislature. Absent legislative authority to the

---

[5] In this regard, a de facto parent may be present at the dependency hearings (Cal. Rules of Court, rule 1410(a) and (b)(2)(A), formerly rule 1311.)

contrary, a juvenile court simply has no jurisdiction in a dependency proceeding to compel the involuntary joinder of a live-in companion of a child's parent.

This does not mean that a juvenile court has no power to protect a dependent child from inappropriate conduct of a live-in companion. For example, if the circumstances so warrant, the court could order that the companion not reside in the home and have no contact with the child. If the custodial parent or guardian refuses to comply, the juvenile court could order the removal of the child from the parent's or guardian's custody.

In simple terms, the court in this case could have compelled the mother to choose between her children and Gene because he refused to comply voluntarily with orders designed to protect the children. Of course, this would have created the sad prospect that the mother might have selected her companion over her children—a result that courts regrettably see too often these days. But such a selection, although emotionally demoralizing to the children, would indicate that removal from the mother is in the long-term best interests of the children.

By limiting the juvenile court's options with respect to the live-in companions, the Legislature may have concluded that the aforesaid choice more directly addresses the problem which led to the creation of the dependency adjudication: Sandra's failure to protect her children from the inappropriate conduct of her live-in companion. The Legislature may have concluded that this problem is resolved more effectively by placing the burden where it belongs, on parents or guardians to recognize when the safety and well-being of their children are being jeopardized and to take appropriate action to protect them. While providing services designed to correct a live-in companion's behavior may resolve the immediate problem which brings a case to the attention of DSS, the Legislature may have concluded that the provision of such services does not necessarily resolve the fundamental problem of a parent or guardian not having the desire or fortitude to take steps necessary to protect their children. Stated another way, the Legislature may have concluded that placing the custodial parent in jeopardy of an order excluding the live-in companion is the best way to protect dependent children.

As previously noted, if the juvenile court chooses not to exclude the live-in companion from the home, it does not—until the Legislature says otherwise—have power to compel the involuntary joinder of the live-in companion to force that companion to comply with dependency orders and

reunification services, despite the fact that such orders might be in the children's interests.

## DISPOSITION

The order of the juvenile court joining Gene C. as a party to these dependency proceedings is void and hereby reversed.

Puglia, P. J., and Evans, J., concurred.